# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| HENRY DUBOIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. _____ |
| HOOPER HOLMES, INC. d/b/a PROVANT HEALTH, | ) ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiff Henry Dubois ("Mr. Dubois") submits the following claims for relief against Defendant Hooper Holmes, Inc. d/b/a Provant Health ("Hooper Holmes" or the "Company"), and in support alleges the following:

## PARTIES

1. Plaintiff Henry Dubois is a resident of McLean, Virginia.

2. Hooper Holmes, Inc. d/b/a Provant Health is a New York corporation registered on March 7, 1906, whose principal place of business is located in Olathe, Kansas.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Mr. Dubois and Hooper Holmes are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Mr. Dubois is domiciled in this District and Hooper Holmes does business in the Commonwealth of Virginia,

and maintains a registered agent therein for service of process located at Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia.

## DUBOIS EMPLOYMENT AGREEMENT

5. On or about September 30, 2013, Henry Dubois was hired by Hooper Holmes as the President and CEO. The employment arrangement was memorialized by an Employment Agreement ("the Employment Agreement"). Attached as Exhibit A is a copy of his September 30, 2013 Employment Agreement.

6. Pursuant to Section 1.4 of the Employment Agreement, Mr. Dubois' duties and responsibilities included, *inter alia*, reporting directly to the Company Board of Directors and informing the Board of all material matters from an operational and financial perspective.

7. As part of his compensation, Mr. Dubois was entitled to a yearly salary which began at $375,000 but was adjusted to $390,000 pursuant to Section 2.1 of the Employment Agreement.

8. In addition to his compensation, Mr. Dubois was entitled to paid vacation "in accordance with the Company's Paid Time Off (PTO) policy in effect from time to time but in no event shall Executive be awarded less than four (4) weeks per annum." Exhibit A, Employment Agreement, Section 2.6.

9. The Employment Agreement included various scenarios to cover Mr. Dubois' departure from Hooper Holmes. This included Mr. Dubois' right to terminate the Employment Agreement with Good Reason. Exhibit A, Employment Agreement, section 3.2. "Good Reason" includes the following definition:

> ***A material diminution in Executive's authority, duties and/or responsibilities as contemplated by this Agreement. (emphasis added.)***

10. Section 3.2 required written notice of "Good Reason" as follows:

Executive must give the Company written notice, in accordance with Section 7.2 of this Agreement, of any Good Reason termination of employment.  Such notice must be given within 60 days following Executive's knowledge of the first occurrence (as determined without regard to any prior occurrence that was subsequently remedied by the Company) of a Good Reason circumstance, and must specify which of the Good Reason circumstances Executive is relying on, the particular action(s) or inactions(s) giving rise to the circumstance, and the date Executive intends to separate from services…which shall be no earlier than thirty (30) days following the date of the Company's receipt of the notice. ***Executive's termination shall not be deemed a Good Reason termination of employment if (i) within 30 days of the Company's receipt of the such notice, the Company remedies the circumstance(s) giving rise to the notice, or (ii) Executive's termination of his employment does not occur within 60 days after the end of the 30-day period provided to the Company to remedy the circumstance giving rise to the notice. (emphasis added.)***

11. Section 7.2 provided that Notice be in writing and sent by certified mail, postage prepaid or by overnight mail to the General Counsel of Hooper Holmes.

12. The Employment Agreement, Section 3.6 (Effect of Termination) provides for the following severance in the event the Employment Agreement is terminated with Good Reason:

**Section 3.6 (a**) *In General*. …the Company shall pay to Executive …(i) any Base Salary, to the extent not previously paid, to the date of termination; (ii) any reimbursable business expenses that have not yet been reimbursed (collectively, the "Accrued Obligation") and (iii) *the cash equivalent of any unused vacation time accrued to the date of termination* in accordance with the Company's PTO policies then in effect. **The Accrued Obligations shall be paid within 30 days after the date of termination. (emphasis added.)**

**Section 3.6 (d)**, Termination by the Company without Cause; by Executive for Good Reason …, provided the following additional benefits in the event Mr. Dubois terminated the agreement with Good Reason:

(i) Executive shall be entitled to receive *payment equal to the amount of his Base Salary* (at the rate in effect immediately prior to this termination). Such Base *Salary payment shall be made in twelve equal installments*, without interest, on a monthly basis for twelve (12) consecutive months. ***The first payment shall be made during the next usual pay period following Executive's termination date***. (emphasis added.)
(ii) All rights to exercise any outstanding award of stock options…
(iii) For the one-year period following the date of termination, Executive shall have the right to continue his participation in such retirement and other benefit plans and program of the Company generally available from time to time to employees of the Company in which Executive is enrolled.

13. Payments under Section 3.6 were conditioned on Section 3.9 (Cooperation; Assistance), Section 4 (Confidentiality) and Section 5 (Non-Competition and Non-Solicitation) as well as a return of a General Release attached to the Employment Agreement.

14. In the event his Cooperation under Section 3.9 was requested, Mr. Dubois is entitled to compensation at the rate of $400 per hour and his attorneys' fees shall be paid by Hooper Holmes. Exhibit A, Section 3.9, Cooperation; Assistance.

## NOTIFICATION OF TERMINATION FOR GOOD REASON

15. On or about March 26, 2018, Hooper Holmes appointed Jim Fleet at Phoenix Management Services to make all decisions relating to the company. The Hooper Holmes' 8K filed with the SEC on March 30, 2018 stated Mr. Fleet would provide "senior executive leadership to the company with all of the officers of the company reporting to him." This effectively removed all of Mr. Dubois' direct reports. Mr. Dubois was instructed to report to Jim Fleet rather than the Board of Directors.

16. Mr. Dubois was instructed by Jim Fleet on April 3, 2018 to focus his duties to SEC filings. On April 4, 2018, he was advised that he would no longer report material events. Mr. Dubois was excluded from key meetings that were part of his duties, including weekly board calls and weekly finance committee meetings.

17. By email on or about April 5, 2018, he was asked to provide a list of items for transition. Mr. Fleet advised Mr. Dubois by phone that he would be leaving the Company. On April 26, 2018, Jim Fleet sent an email to the Board instructing that "Henry is no longer leading the company." On April 26, 2018, Hooper Holmes provided Mr. Dubois with a draft severance agreement for his review with a proposed effective date of April 30, 2018.

18. On April 27, 2018, Mr. Dubois provided his Notice of Resignation for Good Reason in accordance with Section 3.2 of the Employment Agreement. Mr. Dubois identified the diminution of his duties as a basis for Good Reason and gave the Board thirty (30) days' notice of his intent to resign for Good Reason on May 27, 2018. Pursuant to Section 7.2 of the Employment Agreement, the Good Reason notice was in writing and forwarded to Hooper Holmes' General Counsel. Mr. Dubois provided the notice prior to the board's weekly meeting so that they would have an opportunity to discuss it and take action and remedy the grounds for Good Reason if they desired to have Mr. Dubois remain as the CEO.

19. After providing notice of his Resignation with Good Reason, Mr. Dubois provided comments on the proposed severance agreement on May 4, 2018 as requested. He also followed up with the board on May 11, 2018 and May 17, 2018 to discuss his transition and to finalize the severance arrangement in accordance with his Employment Agreement but received no response.

20. By May 27, 2018, the Company had taken no steps to remedy the events leading to his resignation as required. Given the statement by Jim Fleet that Henry Dubois was "no longer leading the Company", there was simply no basis to challenge that there was a diminution of his duties. In any event, the Company provided no written notice pursuant to Section 7.2 prior to May 27, 2018 challenging his Resignation for Good Reason.

21. On May 31, 2018, Mr. Dubois reviewed his pay check and determined that he had only been paid through May 27, 2018.

22. To help facilitate the transition, Mr. Dubois provided a detailed letter on June 2, 2018 outlining amounts that were due under the agreement and the timing of such payments. He also executed the General Release attached to his Employment Agreement which was a condition of any payment.

23. Mr. Dubois provided notice that he was due the following:

- $44,437.50, the cash equivalent of his 237 hours of unused vacation. This amount was due by June 26, 2018, within 30 days after the last day of employment.
- $32,500 for twelve months, the first of which is due on June 15, 2018, the Company's next usual pay period.
- Continuation under Section 3.6(d)(iii) in the retirement and other benefit plans for one year.
- Any expenses incurred for any cooperation or assistance by Mr. Dubois to Hooper Holmes on any issue. Section 3.9, Cooperation; Assistance.

24. On June 4, 2018, Mr. Dubois was notified that Hooper Holmes had intended to provide written notice that it disputed whether Good Reason existed for his termination but "inadvertently" failed to provide him with a letter outlining the reasons for the dispute. Worse, Hooper Holmes' unsent letter attempted to convert Mr. Dubois' Termination for Good Reason as a voluntary "resignation." By the time Mr. Dubois received notice that Hooper Holmes was trying to counteroffer/mischaracterize that his departure was simply a "resignation," Hooper Holmes had already stopped Mr. Dubois' compensation and shut off his computer access. This prevented Mr. Dubois from continuing his duties after May 26, 2018 given their position that the removal of all his duties and reporting responsibilities was not a "diminution of duties."

25. Mr. Dubois continues to comply with the terms of the Employment Agreement, including but not limited to, returning items in his possession and cooperating under Section 3.9 of the Employment Agreement. Mr. Dubois spent 8 hours for time spent cooperating and providing assistance to Hooper Holmes under Section 3.9 of the Employment Agreement and is entitled to $3,200 as a consulting fee for his time. In addition, Mr. Dubois is entitled to $7,080 to cover attorneys' fees incurred for his own representation relating to his cooperation and assistance under Section 3.9 of the Employment Agreement.

## COUNT I – BREACH OF CONTRACT

26. Mr. Dubois repeats and incorporates the allegations in Paragraphs 1-25 as if fully set forth herein.

27. Mr. Dubois complied with his obligations under the Employment Agreement.

28. The removal of his direct reports and reporting responsibilities to the board of directors, as well as the retention of Jim Fleet who would handle his duties and responsibilities, was a "diminution of duties" under his Employment Agreement.

29. Mr. Dubois properly provided notice of Termination for Good Reason under Section 3.2 arising from the diminution of his duties.

30. Hooper Holmes failed to remedy the basis for his termination for Good Reason prior to May 26, 2018.

31. Despite demand, Hooper Holmes has failed to pay Mr. Dubois amounts due and has breached the Employment Agreement.

32. As a result of the breach, Mr. Dubois has the following monetary damages:

- $390,000 (salary)
- $44,437 (vacation)
- $3,200 (consulting fee for cooperation and assistance)
- $7,080 (legal fees for cooperation and assistance)

WHEREFORE, Henry Dubois respectfully requests that an order be entered in his favor against Hooper Holmes, Inc. in the amount of $444,717, along with his attorneys' fees and expenses incurred in this matter.

Dated:  July 13, 2018				Respectfully submitted,

               /s/  Robert H. Cox
Amy S. Owen (VSB No. 27692)
Robert H. Cox (VSB No. 33118)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
(703) 883-0880 [telephone]
(703) 883-0899 [facsimile]
aowen@brigliahundley.com
rcox@brigliahundley.com
*Counsel for Henry Dubois*